This is a suit for damages for personal injuries and for the loss of her automobile which was originally instituted by Mrs. Olive Lee Easley against Sam Roberts, a resident of Amite County, Mississippi, the alleged owner of a truck which was being driven by a negro named Charles Bates, who it is averred was his employee and acting within the course and scope of his employment at the time, and which ran into her car on the west side of the Illinois Central railroad crossing in the Town of Tangipahoa on February 7, 1942. The demand was for $10,000 for pain and suffering *Page 246 
resulting from personal injuries and $600 for the damage to her automobile.
Mrs. Easley died sometime after the accident and her two daughters and a stepdaughter, legatee under her will, were substituted as parties plaintiff. In a supplemental petition filed by them they allege that between the time of the filing of her suit and her death, Mrs. Easley suffered additional pain and anguish and they therefore desire to increase the amount demanded on that item to the sum of $15,000. They allege that as a result of Mrs. Easley's injuries and death there has been expended the sum of $1,789.61 in hospital, doctor and nursing bills. Their entire demand therefore is for the sum of $17,389.61.
The defense is a denial of the negligence alleged against the driver of the truck and an affirmative plea that Mrs. Easley's own negligence, in attempting to cross the highway in view of the approaching truck, without having taken the necessary steps to do so, was the sole cause of the accident. Besides, the defense consists of a denial that Sam Roberts was the owner of the truck and consequently even though the driver may have been negligent, as alleged, he, Roberts, cannot be held liable for the damages that resulted from the collision.
The trial judge, after hearing the testimony, concluded, so we are advised by counsel for defendant, that Roberts was not the owner of the truck and could not therefore be held liable. Judgment was rendered in his favor and the suit dismissed. Plaintiffs have appealed.
[1] The defense of non-ownership is the important one and we might add, the controlling issue on appeal as the testimony relating to the happening of the accident leaves but little doubt, if any, that the truck driver was grossly negligent in running at a greatly excessive rate of speed on approaching this intersection in the highway over and across a railroad track and also in pulling over to his left side of the road and running into the automobile after it had reached that side of the paved portion of the highway, whereas, had he kept to his proper side he would have avoided striking it altogether. All the testimony is to that same effect. No witness testified to anything else and the negro driver himself did not appear at the trial. The testimony regarding the speed of the truck as well as its maneuver in leaving its proper side of the highway is corroborated by the physical facts which show that the automobile was thrown almost completely around on the west side of the road and the truck only came to a stop a considerable distance from the point of impact on that side of the highway also.
[2] As far as the negligence of Mrs. Easley is concerned, the only point made in argument is that she did not stop before crossing the railroad track, neither did she stop before crossing the main highway. The railroad track is some 50 to 60 feet cast of the highway and what connection her failure to have stopped before crossing it, assuming that she did not, had with the accident, is not shown in any manner. Assuming also that she did not stop before crossing highway No. 51, that also would seem to have had no bearing on the collision considering the manner in which it happened. She had already crossed over half of the highway before she was run into, and if she did not stop she was in plain view of the truck driver at the time she was crossing. He could see her some 200 to 300 feet ahead and he no doubt could have taken precaution to stop his truck or slow it down if he had apprehended danger ahead. On the contrary he seemed never to have made any attempt to slow down and not only that, pulled over to his wrong side of the road and ran into her car. We are convinced that the defendant has failed to show any negligence on her part.
On the important question of the ownership of the truck, we find ourselves constrained, after a careful consideration of the facts found in the record, to disagree with the trial judge if he did, as stated by counsel, find that it did not belong to the defendant in the case.
Roberts operated a small saw-mill in Mississippi near the town of Liberty. He admits that at one time he owned two trucks, one of them being the one involved in this accident. He had bought it from Harvey-Jones Motor Company of Liberty, but claims that in October, 1941, he sold it to one C.J. Partin who was engaged in the hauling business, the sale involving the trade-in of an old truck of Partin's which he took in.
[3] In February, 1942, Roberts had sold some lumber to Kent Piling Company at Fluker in Tangipahoa Parish, for the delivery of which this same truck which ran into the Easley car was being used and was being driven by Charles Bates, *Page 247 
who Roberts admits, at one time worked for him although not as a truck driver. It became necessary at that time to secure a license for the truck for the year 1942. While at Kent's place of business one day he filled out and signed in his own name, an application for a Louisiana license which in due time was issued in his name. At this point we placed some importance on what effect this may have had on the question of the ownership of the truck and we find, upon investigating the matter, that whilst the taking out of a license in one's name does not of itself constitute proof of ownership, it is nevertheless a circumstance which tends to prove it. Blashfield, Cyclopedia of Automobile Law and Practice, Vol., 9, Part 2, § 6272.
[4] In our opinion Roberts has not given a satisfactory explanation why he took out the license in his name, if he was not the owner of the truck, even though he says that he was not at that time. At first he was rather evasive in his answers to questions as to when and where he signed the application. Asked to state his reason for having signed it in his name, he says he imagines it was because Partin was in the hospital at the time. Finally, when asked specifically why did he have to have a license if the truck belonged to another man and why wouldn't he have signed the application in that man's name, he answers: "I just can't tell you why."
Partin and a man named Robinson, who worked for him, both corroborate Roberts' testimony about the sale of the truck but their testimony also relates only to a verbal sale with no reference to any written record whatever and they give no better reason than he did why the license was taken out in his name.
Harvey, the seller of the truck to Roberts, also testified about the sale to Partin and the connection he had with it. He says that he did not want to release Roberts on the notes that were still due on it and that is why he continued holding them and no formal transfer of the sale was executed to Partin. Besides, he says it would have cost $10 to make the transfer and without a formal act of transfer that amount would be saved. All of that impresses us as being rather weak proof, especially when viewed against the remainder of the testimony which favors the side of the plaintiff.
Shortly following the accident, when the deputy sheriff arrived at the scene, he asked Charles Bates, the negro driver of the truck, for whom he was working and he unhesitatingly answered, for Sam Roberts. It is urged in argument that this negro was among strangers at the moment, that he was frightened and was not in a proper frame of mind to think clearly. We believe, to the contrary, that his answer, under the circumstances, was a spontaneous expression in which he told exactly what he knew to be a fact. It would hardly seem reasonable that this man would not have known for whom he was working and we believe that he spoke the truth, as he knew it, at that moment.
It is also shown that following the accident, counsel representing Mrs. Easley, having learned that the truck belonged to a non-resident, obtained an order of attachment under which it was seized and soon thereafter he received a letter written on a bill-head of the Harvey-Jones Motor Company and signed by some one for that company, notifying him that they held a claim against the tires on the "Sam Roberts truck" and to govern himself accordingly. Mr. Harvey disclaims any knowledge of this but would not deny that it was written by some one in his office. Had there been a sale of the truck by Roberts to Partin it would seem that his office should have had some record of it especially since, as he stated, one of the conditions of the sale was that they would not release Roberts on the notes he had given in part payment of the purchase price when he bought it.
Another circumstance to be considered in connection with Roberts' disclaimer of ownership of the truck arises out of the settlements made between him and the Kent Piling Company for the lumber he sold them and its delivery to them. All settlements were made with Roberts. There is testimony to the effect that separate accounts were kept by Kent Piling Company but no one connected with that company testified in the case nor were any records of any accounts produced. Roberts stated that he paid Partin in cash most of the time but sometimes by check. Yet not one check nor any one record did he produce to substantiate that or any other proof regarding his arrangement with Partin to haul and deliver his lumber.
In Farrelly v. Heuacker, 118 Fla. 340, 159 So. 24, 25, the Court stated that "it is settled law in this country that the title certificate and the person to whom the *Page 248 
license is shown to be issued constituted presumptive ownership in the car, but such presumption may be met and overcome by evidence." Berry on Automobiles 1037, Sec. 1158, is cited as authority. In this case not only has the defendant failed to overcome the presumption arising out of his having taken out the license for the truck in his name but the several other circumstances related all tend to fortify it.
[5] Moreover this suit is directed against him not only as owner of the truck but also as the employer of the party whose negligence in driving it was the cause of the accident. Regardless whether he was the owner or not, if the proof is sufficient to show that the driver was operating it for him and was acting in the course and scope of his employment at the moment, he has to be held liable under the doctrine of respondeat superior. On this point also we believe that the proof supports the contention of the plaintiff that the negro driver of the truck, Charles Bates, was so employed and that consequently the defendant should be made to respond in damages.
[6, 7] The medical hospital and nursing bills claimed, amounting to $1,789.61, have been proven by checks issued by the plaintiffs for their payment. Their mother's car was damaged beyond repair by the wreck. It was a 1938 four-door Chevrolet sedan which sold for $900 when new, and it is shown that it had been driven about 27,000 miles. A garageman in Tangipahoa paid $40 for the wreck. He and other witnesses testified that at the time of the accident they considered it had a value of fifty per cent or more of its original purchase price. After allowing for the salvage which was recovered, we think that the testimony justifies an award of $450 on this item. The remaining item of damage claimed by the plaintiffs is for the pain and suffering endured by their mother for the period of time between the date of the accident and that of her death, which claim was inherited by them. The accident happened on February 7, 1942 and their mother died on April 26, 1942. She was hospitalized for the greater part of that time and stayed with either one of her two daughters for the remainder of that period. There is no proof of any great or intense physical suffering on the part of Mrs. Easley but no doubt she realized her condition and must have undergone a great deal of anxiety as to what the outcome would be. We have concluded to make an award of $4,000 which we think will be fair under the circumstances presented in this case.
For the reasons stated it is therefore ordered, adjudged and decreed that the judgment appealed from be, and the same is hereby reversed, annulled and set aside, and it is further ordered that there be judgment herein in favor of the plaintiffs, Mrs. Easter Easley Fussell, wife of Odis M. Fussell, Mrs. Lorraine Killen, wife of R.S. Killen and Mrs. Auralie Easley Wiley, and against Sam Roberts, in the full and entire sum of $6,239.61, with legal interest from date of judicial demand, and for all costs of these proceedings.